Ready to begin with our first case, which is Bryant v. Egan. Good morning, your honors. May it please the court, my name is James Talberg and I represent the defendant appellants John Slezak and Kenneth Egan, both of whom are members of the Meriden Connecticut Police Department. In this case, your honors, the district court should be reversed for the following reasons. First, officers Slezak and Egan are entitled to qualified immunity because they did not violate clearly established law. May I ask you what you think was established at the trial after the judge granted the motion against the weight of the evidence that was not already there before the trial? Were any facts established at the trial that were not thrown out as against the weight of the evidence, which we couldn't ourselves review, that weren't already there before? Judge Calabresi, I believe what this court has to accept is the version of facts that were found by the jury. No, I'm sorry. We do not need to accept that because the decision of a judge to grant a new trial as against the weight of the evidence as 13th juror is not in itself reviewable. That is not a reviewable decision. The question that is reviewable is qualified immunity. And my question is, is there anything that came out in the trial, because I haven't seen it, frankly, but I'd like to hear from you, that was not reversed by the judge that wasn't available before? Because we have, it's a summary order, but a summary order by a panel of Dennis Jacobs and Feinberg and the great Leonard Sand that says if you don't have anything new, you should have asked for it before rather than going through the whole thing. And it's just a purely technical matter, but it is a very important matter about when qualified immunity can be asked for. Judge, this court does have interlocutory review of the qualified immunity. Yes, we do. Because there was no violation of clearly established law. And what I would suggest the court, the district court, where the district court erred. You're not hearing my question. My question is, was there anything different about our review of qualified immunity now or the one we would have had when you could have asked for it before trial? Your Honor, this court can look, when assessing the qualified immunity, at clear errors of law by the district court, erroneous findings of material fact. I'd point you to just one. The severity of the crime. Under the Graham analysis, the three factors, the district court noted at page 23 of the decision. But the district court did not make a decision as a matter of law because a plaintiff who isn't here and whose lawyer leaves some problems didn't ask for a judgment as a matter of law. All the district court did was to give a new trial as 13th juror. And that is not in itself something we can review. We cannot review that judgment. There are plenty of cases that say we cannot review that judgment. We could review, certainly can review the qualified immunity interlocutorily. And if there are some facts that were established at trial that he did not throw out because of which this is a new qualified immunity motion, then we can review it. But if there are no facts different from what it was before, then, you know, everybody right and everything says you had to do it then. I hear your point, Your Honor, and I understand the limitations of an interlocutory appeal on qualified immunity. But what the court did was graft new and incorrect facts. If I could just recite one. At page 23 of the decision, the court noted that Mr. Bryant was charged with simple possession of narcotics, not distribution or not possession. And that's under the Graham analysis. The court was looking at the severity of the crime. If you compare that with Detective Visconti's testimony at 355 of the joint appendix, he testified the plaintiff was charged with possession of narcotics, possession with intent to sell, possession with intent to sell in a school district, and resisting arrest. There was a fifth charge that wasn't before the jury, but it's in the record, the CMECF record, July 10, 2013. He was charged- Was there a dispute as to what he had been charged with? Isn't that a matter of public record? Well, the dispute is this. The district court got it wrong. When minimizing the severity of the crime, the court made a clear error by indicating it was just simple possession. It wasn't. Were the records in the district court record? They- The record as to what he was actually charged with. Yes, Your Honor. It is at document number 21-1. It was Exhibit A to a motion we filed July 10, 2013. The district court had access to that but made a plain error. Second, the threat posed by the plaintiff. The district court erred there in that the court indicated there were four officers in the cell immediately after the tasing. In fact, one of the persons in the cell wasn't even a police officer. At Detective Visconti's testimony, 272 of the joint appendix, he described the person in tan as PST Archer, a services tech. He's not even an officer. He came into the cell because of the threat posed by Mr. Bryant. Most of the- Do these mistakes in the district court's opinion that you're pointing us to, let's assume for the moment they're all mistakes, do they go to the reasons he gave for finding, for determining a motion for a new trial should be granted or do they go to the qualified immunity analysis? They go to the qualified immunity analysis. I guess what I'm having difficulty understanding, let's say just for the moment, that we think the district court may have erred in saying that the police officers are not entitled to qualified immunity. I'm having difficulty seeing why that doesn't leave us in the posture of there are still disputed issues of fact to be resolved and he's granted a motion for a new trial, so the qualified immunity analysis is not really ripe for determination until that trial has taken place. I would respectfully disagree, Your Honor, for one main reason. The only evidence the district court relied on in substituting the district court's judgment for that of the jury, which ought to have been given deference, is the video. It is in the special appendix. It's special appendix three. I implore you to please review the video. It is – there's no sound. It's grainy. You can't even make out facial features. You can't identify people. Again, if the court on a Rule 59 motion is not making a judgment of law but is, as classically has been described, a thirteenth juror, then that thirteenth juror's findings of fact are not, for us, reviewable, reversible. They are why a court says, and it's very unusual, this is a very unusual case because, as far as I can tell, it's the only case that I've seen before our court where we're dealing with a Rule 59. If this had been a judgment as a matter of law, then all sorts of things would happen, but that isn't the posture. Precisely, Your Honor. I agree. We couldn't find another decision in the District of Connecticut. The only reported decision where something similar had happened is the Ruffin case where Judge Chin set aside a verdict, but there, the judge, there were objective findings. There was medical testimony about fractured teeth. Well, but in any case, that case settled. I mean, that case didn't go on, so it doesn't help one way or the other. I mean, on the facts of it, it was very much Judge Chin did very much what Judge Underhill did here, and as you say, you know, that doesn't really cut against you. So that's the only case that we have, and some people might think it cuts against you. I don't think it cuts against you. Because it's so extraordinary, Your Honor, that's why this case is so important. If I could just highlight one other error, clear error by the court, and it goes to the qualified immunity analysis. The district court improperly applied 20-20 hindsight. At page 29, special appendix 29 of the decision, the court said it would have been reasonable for, to put Bryant in a dry cell and wait until he submitted to a search or released the drugs. That is diametrically opposed to the Graham instruction the court gave to the jury, that you don't look at this with 20-20 hindsight. There was no evidence in the record about a dry cell. We don't even know what that is, and so this is clearly an error by the district court. I see that my time is up. What is a dry cell? We don't know. You can scan the thousand pages of the record, there was no evidence about that, but it is an error where the court in its analysis of qualified immunity, we're talking about the interlocutory appeal, Judge Calabresi, the judge made a clear error. The judge said that it was clearly established that, I think I'm basically quoting, officers cannot employ significant force like a taser against a suspect who is handcuffed, surrounded by multiple officers in a holding cell, and who does not pose a threat, either a threat to the officers or a threat of escape. What is wrong with that as a statement of law? Well, the law was not clearly established, and this case is closer to the facts that Your Honor was involved with, the Crowell-Fitzpatrick case, in which there was a reversal of a summary judgment. But in that Crowell case, which relates to your question, Your Honor, there was no clearly established argument. And what distinguishes this case from Crowell and what points out the flaw in the district court's reasoning is that there was no clearly established law. Well, if I may, the question of the merits is whether this case is more like Judge Livingston's Crowell case or Judge Livingston's Tracy case. They're both fair, and the question of the merits is which, and that's a very interesting and difficult question. But I'm still before, and let me read you what our court said in the Akzek case. Once the district court rejected the jury's verdict, the verdict form no longer resolved disputed factual issues regarding the precise force used. On the issue of qualified immunity, in most respects, it's indistinguishable from the fact scenario presented on the original situation. Now, how is that any different from this? You may well get qualified immunity, you know. The question is whether you are protected from a new trial, given that you didn't object to a trial before on the same set of facts. It isn't whether you will get some qualified immunity ultimately. Well, our objection to the new trial is this appeal seeking the invocation of qualified immunity based on the facts. And I've run past my time. May I just wrap up, Your Honors? These officers, here's another . . . Before you wrap up, could you tell me exactly what it was the district court said that we should read as a decision that your clients are not entitled to qualified immunity as a matter of law? As a matter of law. Unless he decided that as a matter of law, they're not entitled to qualified immunity, you're not entitled to appeal. Well, he did, Your Honor. In the decision, there is an analysis starting at page 23. The judge goes through an entire analysis. It's not page 23. It's page 29, SAP 29. The court goes through a qualified immunity analysis. That is what we're appealing to. Yes, but the judge's analysis there, which he does use to inform his decision, is there to inform his decision under Rule 59 motion. Because he says correctly, if I found that as a matter of law, you got qualified immunity now, then it would be silly for me to order a new trial. And all he is saying is, I don't find that you get it as a matter of law. He isn't saying, I've read all that anywhere, you are denied it as a matter of law. That's all the difference. Oh, I respectfully disagree, Your Honor. He says at page 32, we're not entitled to qualified immunity. He says it right at page 32 and 33. So if I may just close, there is tension also with the Seventh Amendment. These officers were guaranteed a right of trial by jury under the Seventh Amendment. There were 13 witnesses, 5 days of evidence. The jury weighed the evidence and made these credibility determinations. And so for all of these reasons, Your Honor, the verdict form signed by the jury foreman at Appendix 578 ought to be afforded deference, and we respectfully request that the district court be reversed, or at the very least, that the officers be afforded qualified immunity. Thank you for your honor. Thank you, Your Honors. Safe drive back to Connecticut.